**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC, a Pennsylvania limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC., a Korean corporation, LG ELECTRONICS U.S.A., INC., a Delaware corporation, LG ELECTRONICS MOBILECOMM U.S.A., INC., a California corporation, <br><br> Defendants. | **Civil action No. _____** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff FlatWorld Interactives LLC ("FlatWorld"), for its complaint against defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc. (collectively "LG" or "Defendants"), alleges as follows:

### I.      NATURE OF THE ACTION

1.      This is an action under the patent laws of the United States of America, 35 U.S.C. §§ 1, *et seq.*, for infringement of a patent assigned to FlatWorld.

### II.      THE PARTIES

2.      FlatWorld is a limited liability company, organized and existing under the laws of the State of Pennsylvania. FlatWorld's principal place of business is in Villanova, Pennsylvania. FlatWorld is the assignee of U.S. Patent No. 6,920,619 (the "'619 Patent") and U.S. Patent No. RE 43,318 (the "'318 Patent"), entitled *User Interface for Removing an Object From a Display*.  A copy of the '318 Patent is attached as Exhibit A.

3.      LG Electronics, Inc. (referred to individually herein as "LGI") is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at LG Twin Towers 20, Yeouido dong, Yeongdeungpo-gu, Seoul, Republic of Korea 150-721.

LGI manufactures or has manufactured for it, uses, offers for sale, sells and/or imports into the United States, a myriad of consumer products, including a wide variety of mobile and entertainment products, such as at least forty models of smartphones and tablets.

4.      LG Electronics U.S.A., Inc. (referred to individually herein as "LGE") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1000 Sylvan Ave., Englewood Cliffs, New Jersey, 07632.  On information and belief, LGE is a subsidiary of LGI.  On information and belief, LGE manufactures or has manufactured for it, uses, offers for sale, sells and/or imports into the United States a wide range of products, including consumer electronics, computer components and mobile and entertainment products, including at least forty models of smartphones and tablets.

5.      LG Electronics Mobilecomm U.S.A., Inc. (referred to individually herein as "LGM") is a corporation organized and existing under the laws of the State of California, with its principal place of business at 10101 Old Grove Road, San Diego, California, 92131.  On information and belief, LGM is a subsidiary of LGI.  On information and belief, LGM manufactures or has manufactured for it, uses, offers for sale, sells and/or imports into the United States a wide range of mobile and entertainment products, including at least forty models of smartphones and tablets.

### III.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, because this is a civil action for patent infringement arising under the Patent Laws of the United States, Title 35.

7.      This Court has personal jurisdiction over LG because LG does business within this judicial district, LGE is incorporated in Delaware and is owned by LGI, and LG has committed acts of infringement within.

8.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391 (b)(3), (c)(2), and (c)(3), and 1400(b), because at least one of the defendants was incorporated in the State of Delaware.

## IV.    THE PATENT-IN-SUIT

9.      Slavoljub ("Slavko") Milekic, Ph.D. ("Professor Milekic"), is Professor of Cognitive Science & Digital Design at the University of the Arts in Philadelphia, Pennsylvania (http://www.uarts.edu/users/smilekic).  He holds a medical doctor degree and a Master of Science degree in Neuropsychology from the Belgrade School of Medicine in Belgrade, the former Yugoslavia, and a Ph.D. in Cognitive Science from the University of Connecticut, in Storrs, Connecticut.  At the University of the Arts, he teaches in at least four different departments that include:  Multimedia (courses:  "Psychology of Human/Computer Interaction," "Making iPhone & iPad apps the easy way"), Art Education (courses "Creative & Cognitive Development," "Art & Inclusion," "Interactive media"), Masters in Industrial Design (course:  "Cognitive Science of Interaction Design"), and Liberal Arts (course:  "Psychology of Touch").  Professor Milekic is the sole inventor of the subject matter claimed in the '318 Patent.

10.     By written assignment from Professor Milekic, FlatWorld owns all right, title and interest in and to the '619 Patent and '318 Patent, including all rights arising thereunder, such as the right to bring suit and recover damages for past infringement.  Professor Milekic is an owner of FlatWorld.

## V.    BACKGROUND OF THE INVENTION

11.     While Professor Milekic was teaching in the Cognitive Science Department of Hampshire College, in Amherst, Massachusetts, he began experimenting with the use of touch screens in testing the cognitive development of children.  He developed a testing tool with a touch screen programmed to allow children to directly manipulate or move objects on the screen, and "hide" them behind other objects.  To his surprise, combining the physical activity of moving objects with a representation of real objects on the screen allowed children to use the screen more effectively.

12.     Professor Milekic realized that this way of interacting with the digital medium, *i.e.*, through a touchscreen, opened a new range of possibilities for children to interact with computers. He began looking for other ways to implement it.  In so doing, he noticed a call for proposals for a conference called "*Museums and the Web*," dealing with art and the digital medium.  Professor

Milekic wrote a theoretical paper outlining how to make digital information child-friendly, and presented the paper at the conference in March 1997.  The presentation attracted considerable interest from museum professionals, some of whom subsequently contacted him and asked him to design such a system for their use.

13.    At that time, museums had begun digitizing their collections.  Digitized collections contained tens of thousands of images, organized like a database, searchable by artist, medium, *etc*. Although this made art collections digitally ***available***, they were not very ***accessible***, particularly for children. Professor Milekic began observing children to learn how they dealt with large numbers of items during play, for example, when putting together a large puzzle.  He noted that children use a simple strategy:  they (a) look for particular pieces that satisfy a criterion, for example, they look for a blue-colored piece of the puzzle if a missing piece is part of the "sky," (b) pick up blue pieces in their vicinity and examine them, and (c) if they do not fit, throw them away.

14.    Professor Milekic realized that repeated exposure to individual items belonging to the same category leads to creation of a "mental prototype," which permits one to recognize an unknown exemplar and classify it in the correct prototypical category.  For example, when a child is exposed to dogs of different breeds, he or she forms a mental prototype of "doggedness," which permits the child to identify an unknown breed as belonging to the "dog category."  Professor Milekic decided to apply the same principle to virtual galleries of digital art museum collections. Art could be organized into child-friendly categories, such as "faces" or "flowers."  Using a touchscreen, a child could "browse" a category of digital images of works of art, and "throwing away" a digital image would change the category to a different category of digital images of works of art.  He believed that this system would teach a child to distinguish between different categories of painting styles, such as impressionism, cubism, pointillism, *etc*.  Then later, when presented with an unknown work of art, the child would be able to place the work into its proper category, as do art historians.

15.    Following these principles, Professor Milekic agreed to design such a touchscreen system for the Speed Art Museum, in Louisville, Kentucky.  In so doing, Professor Milekic

realized that the touchscreen interface he was designing was unlike anything that had come before

it.  At that time, touchscreen applications were used primarily as panels of "buttons," *i.e.*, users

would touch a certain area of the screen as if pushing a button.  There were at most only

rudimentary forms of gesture recognition on touch screens at that time.

16.    On August 28, 1997, Professor Milekic filed Provisional Application No. 60/057,117.

On June 12, 1998, he filed the non-provisional patent application that matured into the '619 Patent,

which was duly and lawfully issued on July 19, 2005, claiming priority from the date of the

provisional application.

17.    One example of a claim of the '619 Patent is Claim 1, which recites a system with a

"pointing device" (for example, a touch screen), coupled to a computer, in which images may be

removed with a flick of the pointing device (such as a finger), as follows:

> A system for manipulating images comprising:
>
> A screen upon which an image is displayed; and
>
> A computer coupled to the screen, the computer causing the images
> to be manipulated in response to location inputs from a pointing
> device, the system being characterized in that:
>
> When the image is being dragged in response to the location inputs
> and the system detects that the velocity with which the image is
> being dragged exceeds a threshold velocity, the system responds by
> removing the image from the display without leaving any
> representative thereof in the display.

18.    FlatWorld was formed on January 25, 2007, for the purpose of promoting and

commercializing the inventions claimed in the '619 Patent.  For that purpose, Professor Milekic

assigned the patent to FlatWorld.  On July 18, 2007, FlatWorld filed reissue patent application

11/779,310, and the patent reissued on April 17, 2012 as U.S. Patent No. RE 43,318.

19.    FlatWorld has installed additional touchscreens according to the inventions claimed

in the original '619 Patent and reissue '318 Patent in March, 2008 for the Pennsylvania

Horticultural Society's Flower Show, and in July, 2009 for the Philadelphia Zoo Snow Leopard

Interactive Exhibit.

## VI.    NOTICE OF THE PATENT

20.    LG received notice of RE 43,318, at the latest, on September 10, 2007, by letter sent certified mail from Gordon Nelson to Debbie Epps of defendant LGM.

## VII.    BACKGROUND OF THE INFRINGEMENT

21.    LG's infringement of the FlatWorld patent provides LG with unique functionality for its product that was the result of Professor Milekic's innovation and not LG's.

22.    LG has made or had made for it, used, offered for sale, sold, and/or imported into the United States smart phone handsets using gesture-recognition touch screens under model names including, but not limited to, Optimus, Elite, Viper, Lucid, Nitro, Spectrum, Marquee, Ignite, myTouch, DoublePlay, Esteem, Enlighten, Thrill, Revolution, Genesis, G2X, Thrive, Phoenix, Axis, Apex, Vortex and Ally, and variations thereof ("Smart Phones").  Images of these Smart Phones may be seen at http://www.lg.com//us/android-phones .

23.    LG has also made or had made for it, used, offered for sale, sold, and/or imported into the United States tablets using gesture-recoginition touch screens under various model names including, but not limited to, the T-Mobile G-Slate:



24.    Each of the foregoing LG articles forms a system and apparatus that incorporates elements meeting all of the limitations of one or more claims of the '318 Patent.  As an example only, and not by way of limitation, each of the foregoing LG articles is a system comprising a screen and a computer, with a pointing device that manipulates images on the screen, in which when one or more images is dragged at a velocity that exceeds a threshold velocity, the system responds by removing the image(s) from the screen without leaving a representative of the image

on the screen, as the following images, shown for illustrative purposes only and without limitation, reflect:







**COUNT I**

**INFRINGEMENT OF THE '318 PATENT**

25.     FlatWorld re-alleges and incorporates herein by reference the foregoing allegations as if fully set forth herein.

26.    LG has been and continues to directly and/or indirectly infringe (literally or under the doctrine of equivalents) one or more claims of the '318 Patent by making, using, offering for sale, selling and/or importing into the United States articles having elements that meet all of the limitations of the infringed claims.  By way of illustration only, these infringing LG articles include, but are not limited to, the following and variations thereof:

| Accused Smart Phones |
|---|
| Optimus |
| Elite |
| Viper |
| Lucid |
| Nitro |
| Spectrum |
| Marquee |
| Ignite |
| myTouch |
| DoublePlay |
| Esteem |
| Enlighten |
| Thrill |
| Revolution |
| Genesis |
| G2X |
| Thrive |
| Phoenix |
| Axis |
| Apex |
| Vortex |
| Ally |
| **Accused Tablets** |
| T-Mobile G-Slate |

27.    LG has also actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce, infringement of the '318 Patent by making, using, offering for sale, selling, and/or importing into the United States the illustrative accused LG articles

listed in Paragraph 23 (the "Accused LG Articles"); with knowledge that its customers and end users will use, market, sell, offer to sell, and import the Accused LG Articles; and with knowledge and specific intent to encourage and facilitate those infringing sales and uses of Accused LG Articles through the creation and dissemination of promotional and marketing materials, instructional materials, product manuals, and technical materials.

28.     LG's infringement of the '318 Patent has been on a massive scale, and has taken place with actual knowledge of the inventions claimed therein.

29.     As a result of LG's infringement of the '318 Patent, FlatWorld has been and will continue to be irreparably harmed unless and until LG's infringement is enjoined by this Court.

30.     As a result of LG's infringement of the '318 Patent, FlatWorld has been and will continue to be damaged in an amount to be proved at trial, but not less than a reasonable royalty for each infringement.

## PRAYER FOR RELIEF

Wherefore, FlatWorld respectfully requests that this Court:

A.     Enter a judgment in favor of FlatWorld that LG has infringed one or more claims of the '318 Patent;

B.     Grant a permanent injunction enjoining LG, its officers, directors, agents, servants, affiliates, employees, successors, assigns, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith, from infringing and/or inducing others to infringe or contribute to the infringement of the '318 Patent;

C.     Award FlatWorld damages in an amount sufficient to compensate for LG's infringement of the '318 Patent in an amount to be proved at trial, but not less than a reasonable royalty;

D.     Award prejudgment and post judgment interest to FlatWorld under 35 U.S.C. § 284;

E.     If supported by the evidence, award increased damages, under 35 U.S.C. § 284, in an amount not less than three times the amount of actual damages awarded to FlatWorld;

F.     If supported by the evidence, declare this case exceptional under 35 U.S.C. § 285 and award FlatWorld reasonable attorney's fees; and

G.      Grant FlatWorld such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

FlatWorld hereby demands a trial by jury on all issues so triable.

Dated: July 20, 2012                          FARNAN LLP

                                              _/s/ Brian E. Farnan_____
                                              Joseph J. Farnan, Jr. (Bar No. 100245)
                                              Brian E. Farnan (Bar No. 4089)
                                              919 N. Market Street, 12th Floor
                                              Wilmington, DE 19801
                                              (p) (302) 777-0300 (phone)
                                              (f) (302) 777-0301 (fax)
                                              bfarnan@farnanlaw.com

Of Counsel:

Steve W. Berman
Mark S. Carlson
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:   (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

                                              *Attorneys for Plaintiff*
                                              *FlatWorld Interactives LLC*