**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FLATWORLD INTERACTIVES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-804-LPS |
| SAMSUNG ELECTRONICS CO., LTD., *et al.*, | **JURY TRIAL DEMANDED** |
| Defendants. | |
| FLATWORLD INTERACTIVES LLC, | |
| Plaintiff, | |
| v. | C.A. No. 12-964-LPS |
| LG ELECTRONICS, INC., *et al.*, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS' JOINT RESPONSIVE CLAIM CONSTRUCTION BRIEF**

OF COUNSEL:

Victor H. Polk, Jr.
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
Tel: (617) 310-6000

Richard A. Edlin
Hyun Chung
Chang Joo Kim
Joshua L. Raskin
Kate Hutchins
John Handy
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc. and Samsung
Telecommunications America, LLC*

Steven Lieberman
Brian A. Tollefson
Joo Mee Kim
ROTHWELL, FIGG, ERNST
  & MANBECK, PC
607 14th Street., N.W., Ste. 800
Washington, D.C.  20005
Tel:  (202) 783-6040

John W. Shaw (#3362)
Karen E. Keller (#4489)
David M. Fry (#5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, Delaware 19801
Tel: (302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com

*Attorneys for Defendants LG Electronics,
Inc., LG Electronics U.S.A., Inc. and
LG Electronics Mobilecomm U.S.A., Inc.*

Dated:  October 15, 2013
1126461/39350

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. - 1 -

II.     ARGUMENT ....................................................................................................... - 1 -

        A.      "When" Does Not Mean "If"....................................................................... - 1 -

        B.      Figure 13 Cannot Trump the Prosecution History Disclaimers Disavowing
                "Throwing" After A Finger Is Lifted ............................................................ - 4 -

        C.      Figure 13 Does Not "Throw" Images As Claimed ......................................... - 7 -

        D.      The Term "Representative Thereof" Cannot Be Defined By the Prior Art
                Subject Matter It Carved Out......................................................................... - 8 -

        E.      "Removed/Removing" Is a Separate Limitation From "Without Leaving a
                Representative of the Removed Image"........................................................ - 11 -

        F.      FlatWorld's Construction of "Image" is Not Reasonably Restricted .............. - 12 -

III.    CONCLUSION ................................................................................................. - 12 -

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Angelo Mongiello's Children, LLC v. Pizza Hut, Inc.*,
  70 F. Supp. 2d 196 (E.D.N.Y. 1999)................................................................2

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006)......................................................................11

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1337 (Fed. Cir. 2007)......................................................................4

*Gillespie v. Dywidag Sys. Int'l, USA*,
  501 F.3d 1285 (Fed. Cir. 2007)......................................................................3

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008)......................................................................8

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
  264 F.3d 1326 (Fed. Cir. 2001)......................................................................4

*North Am. Container, Inc. v. Plastipak Packaging, Inc.*,
  415 F.3d 1335 (Fed. Cir. 2005)......................................................................5

*Pickholtz v. Rainbow Techs., Inc.*,
  125 F. Supp. 2d 1156 (N.D. Cal. 2000) *rev'd and remanded on other grounds*, 284
  F.3d 1365 (Fed. Cir. 2002) ..........................................................................11

*Rheox, Inc. v. Entact, Inc.*,
  276 F.3d 1319 (Fed. Cir. 2002)......................................................................5

*Southwall Techs., Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed. Cir. 1995)........................................................................1

*Thomson Consumer Elecs., Inc. v. Innovatron, S.A.*,
  43 F. Supp. 2d 26 (D.D.C. 1999) ...................................................................2

*TM Patents, LLP v. Int'l Bus. Machines Corp.*,
  136 F. Supp. 2d 209 (S.D.N.Y. 2001) ..........................................................11

## I.   INTRODUCTION

FlatWorld's constructions defy the bedrock principle that "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."[1]  In order to gain allowance, FlatWorld distinguished the prior art by arguing that, at the time an image being dragged across a display exceeded a threshold velocity, the drag changed to a throw, thereby removing the image from the screen.  FlatWorld now attempts to rewrite the patent to provide that images are not thrown at the time the threshold velocity is exceeded; instead, images are thrown only after other unclaimed conditions, such as a finger later being raised from the screen, are met.

FlatWorld's proposed claim constructions reinvent the '318 patent by (i) ignoring narrowing amendments and disclaimers made during prosecution; (ii) cherry-picking dictionary definitions for commonplace words like "when"; (iii) misinterpreting "comprising" claim language as making limitations open-ended; and (iv) relying on source code snippets that are not even covered by the claims that were ultimately allowed.  In sum, FlatWorld asks this Court to ignore the extensive prosecution history in favor of select dictionary definitions and mischaracterized, and unclaimed, source code to support its far-reaching constructions.  Unlike FlatWorld's constructions, Defendants' are true to the record and should be adopted.

## II.       ARGUMENT

### A.       "When" Does Not Mean "If"

The term "when" as used in the claims should mean "at or during" to properly define the scope of the'318 patent.  The claims disclose the throwing of images *during* a drag or continuing

---

[1] *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995).

touch.[2]  FlatWorld attempts to substitute "when" with "if" to avoid the temporality of the term "when" and expand the scope of the claims.  FlatWorld's argument lacks any logical value because "when" an event occurs, there is no further question about "if" it will occur.

This precise claim term "when" has been considered in other cases and the temporal construction Defendants proposed here has been consistently adopted.  As the courts have noted, dictionaries have multiple definitions of the term "when" but virtually all are temporal, not conditional.  One court noted:  "of the six definitions set forth in one respectable dictionary, the first five have a temporal meaning; only the sixth supports [defendant's] conditional reading."[3] Of those definitions, "[t]he most common use of the term 'when' is to indicate a point in time."[4] As a result, "[i]f the applicants wanted 'when' to mean 'if,' they should have clearly so stated in the specification or file history."[5]

The applicant for the '318 patent did no such thing.  The '318 patent specification defines "throwing" as removing images *while* they are being dragged in excess of a threshold velocity:

> The throwing action is executed *when* the speed at which an object is dragged across display 111 exceeds a threshold speed which corresponds more or less to the speed of the natural throwing motion. *When the threshold is exceeded*, the '*thrown*' object will *continue* to move in the same direction *even when the finger is lifted off the screen*. One use of throwing is to remove an object from the display.[6]

For a thrown object to continue to move even after the finger is lifted, by definition it must have already been thrown and have been moving prior to the finger being lifted.  Thus, not only did

---

[2] Defendants' Joint Opening Claim Construction Brief (filed Sept. 18, 2013) [C.A. No. 12-804-LPS, D.I. 55] ("Defendants' Opening Brief") at 6-8.

[3] *See Thomson Consumer Elecs., Inc. v. Innovatron, S.A.*, 43 F. Supp. 2d 26, 36 (D.D.C. 1999).

[4] *Id.*

[5] *Angelo Mongiello's Children, LLC v. Pizza Hut, Inc.*, 70 F. Supp. 2d 196, 203 (E.D.N.Y. 1999).

[6] '318 patent at col. 6, ll. 56-62 (emphasis added).  *See also* Defendants' Opening Brief at 4-5.

- 2 -

the applicant fail to clearly indicate an intention to capture a conditional meaning for "when", but it used the term temporally, just as reflected in Defendants' claim constructions.

Nor does anything in the prosecution history suggest a conditional construction of the term. Instead, as set forth in Defendants' Opening Brief, FlatWorld expressly disclaimed throwing images *after* a drag ends.[7] "The patentee is held to what he declares during the prosecution of his patent" and cannot use claim construction to avoid what the Examiner was told during patent prosecution.[8]

The one section of the specification on which FlatWorld relies for its conditional construction does not support its position. FlatWorld highlights the sentence in the specification containing the word "if": "*If* the distance between the position variables is greater than that, *a throw has occurred*."[9] There is no dispute that whether the throw occurs is conditioned upon exceeding the threshold velocity. The throw occurs, however, at the time the threshold velocity is reached, that fact is not conditional, and the portion of the specification FlatWorld relies upon is consistent with this fact. The use of present perfect tense ("has occurred") indicates that the throwing action started in the past (i.e., when the threshold velocity was exceeded) and is now complete. FlatWorld's interpretation would require the sentence to read that if the threshold velocity is reached, the throw may occur at some later time. The portion of the specification quoted by FlatWorld is wholly consistent with Defendants' claim construction.[10]

---

[7] *See* Defendants' Opening Brief at 3-8 (discussing how the amendments and disclaimers during prosecution to overcome Henckel, and other specification statements temporally confine "when the image is being dragged in response to location inputs" to "at or during the time" the image is being dragged).

[8] *See Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007) (citations omitted).

[9] '318 patent at col. 12, ll. 18-20 (emphasis added).

[10] FlatWorld also points to the fact that there is a reference in the same section to other "conditions." But, the additional conditions referred to in that section have nothing to do with

Finally, the Federal Circuit has flatly rejected FlatWorld's fallback argument that the use of the word "comprising" in the preamble of the claim causes *each limitation* of the claim to be open-ended (*see* FlatWorld Opening Brief at 10-11, 15):

> [W]e acknowledge that the term "comprising" raises a presumption that the list of elements is nonexclusive.  However, "*'[c]omprising' is not a weasel word with which to abrogate claim limitations*."  "Comprising" appears at the beginning of the claim—"comprising the steps of"—and indicates here that an infringing process could practice other steps in addition to the ones mentioned.  Those six enumerated steps must, however, all be practiced as recited in the claim for a process to infringe.  *The presumption raised by the term "comprising" does not reach into each of the six steps to render every word and phrase therein open-ended –especially where, as here, the patentee has narrowly defined the claim term it now seeks to have broadened.*

*Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007) (emphasis added) (internal citations omitted).[11]  In the claims here, the word "comprising" simply means that the presence of additional elements is not excluded.  It does not mean that the recited elements are open-ended.  The word "comprising" does not change the meaning of "when" to "if" – signifying that an image can be removed from a display at *any time after* it is dragged in excess of a threshold velocity.

### B.    Figure 13 Cannot Trump the Prosecution History Disclaimers Disavowing "Throwing" *After* A Finger Is Lifted

Figure 13 in the '318 patent does not nullify the disclaimers the applicant made during prosecution to obtain the patent.  FlatWorld relies on Figure 13 for the proposition that exceeding a threshold velocity merely "*is a condition* to change the meaning of a gesture from a drag to a throw" such that the throw would occur *after* the drag sequence is completed and the finger is

---

whether the throw has occurred, but only the type of throw being called for, whether a "throwLeft condition" or the "condition GetNewPart."  Nothing anywhere in the claims or specification suggests any temporal condition.

[11] *See also Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001) ("The open-ended transition 'comprising' does not free the claim from its own limitations.").

lifted from the screen.[12]  This open-ended construction relegates the "threshold velocity" to only "a condition" necessary to remove an image from a display.  As such, it would improperly broaden the scope of the claims to cover removing dragged images only *after* the finger is lifted.

The error in FlatWorld's discussion of what Figure 13 in fact discloses is discussed below.  Regardless of what Figure 13 discloses, however, it cannot trump the express disclaimers made during prosecution to overcome the Henckel prior art reference.[13]  As stated by the Federal Circuit, "the fact that claims do not cover certain embodiments disclosed in the patent is compelled when narrowing amendments are made in order to gain allowance over prior art."[14] This rule has been explained:

"[W]here the prosecution history requires a claim construction that excludes some but not all of the preferred embodiments, such a construction is permissible and meets the standard of 'highly persuasive evidentiary support.'  This follows from our precedent that 'the prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution.'"[15]

Thus, even if Figure 13 functions as FlatWorld contends, Defendants' proposed construction for "threshold velocity" should be adopted.  The construction of "threshold velocity" as "a velocity that when exceeded changes the meaning of the gesture from a drag to a throw" properly excludes what FlatWorld disclaimed during prosecution yet now seeks to

---

[12] Plaintiff's Opening Claim Construction Brief (filed Sept. 18, 2013) [C.A. No. 12-804-LPS, D.I. 57] ("FlatWorld's Opening Brief") at 11-14 (emphasis added).

[13] *See* Defendants' Opening Brief at 5-6 (discussing amendments and disclaimers made to overcome Henckel).

[14] *See North Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1346 (Fed. Cir. 2005).

[15] *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1327 (Fed. Cir. 2002) (citation omitted).

recapture.  The meaning of the gesture changes to a throw when the threshold velocity is exceeded, not at some later time.

FlatWorld's proposed construction also does not cover its own representations as to how its invention works.  During prosecution, in order to get its patent, FlatWorld told the Patent Office that its claimed invention operates as follows:

"[T]he amended description of the limitation is intended to make it clear that when the image is being dragged faster than the threshold velocity, the semantics of the drag operation changes: *instead of simply moving faster*, the image vanishes."[16]

In other words, FlatWorld argued that the drag does not continue (*i.e.*, "instead of simply moving faster"), which can only be true if the finger is down.  Now, however, FlatWorld contends that the semantics of the gesture do not have to change until some other, unclaimed conditions are met.

Using the example of lifting a finger as being the later unclaimed condition, applying FlatWorld's construction would result in the exact opposite of what FlatWorld told the Examiner. In that situation, if a user were to make a flick, at the time the image being dragged exceeded the threshold velocity, the image would continue to accelerate until the finger was lifted, and only after the finger was lifted would the semantics of the gesture change to a throw. Clearly, waiting until other conditions are met before starting a throw was not intended at the time FlatWorld was arguing to get its patent, and it should not be able to reverse that key argument now.

---

[16] Defendants' Chart, Ex. D-2 at 6 (emphasis added).

### C.    Figure 13 Does Not "Throw" Images As Claimed

Even if there was no such disclaimer during prosecution of the '318 patent, Figure 13 can have little weight because it is undisputed that the source code sequence there does not operate in a manner consistent with the claims as issued.  Putting aside when the throw occurs, the claims provide that a throw will occur if the threshold velocity is exceeded while the image "is being dragged" or "continually moved" or "responding to a continuing touch."  Figure 13, however, does not provide for a throw to occur if the threshold velocity is exceeded *at any point* during its movement.  In order to determine whether a throw should occur, Figure 13 *only* measures velocity of the image at the last 1/30[th] of a second prior to the finger being lifted.

To summarize how Figure 13 operates:

- "[A]s long as the touch remains on the screen, no matter how fast the image is dragged it will *never* be thrown."[17]

- After a finger is lifted, the image is removed from the display if the image was dragged more than 2 pixels in either the x or y coordinates ***over the last "two ticks," 1/30[th] of a second, of the drag sequence***.[18]

- If the threshold velocity was exceeded during the drag but not in the last 1/30[th] of a second, a throw will not occur.[19]

As FlatWorld admits, Figure 13 will *not* result in images being "thrown" while they are being dragged, but only if the finger is at some time lifted from the screen.  Nor will images be thrown in a situation where the threshold velocity is exceeded before, but not during, the last 1/30[th] of a second.[20]

Nothing in the '318 patent claims covers not removing images "being dragged" or "continually moved" unless the finger is lifted; nor does the claim language cover only detecting

---

[17] FlatWorld's Opening Brief at 12 (emphasis in original).
[18] *Id*. at 13.
[19] *Id*. at 12-13.
[20] *Id.*

the distance an image was dragged during the final 1/30[th] of a second.  Therefore, FlatWorld's argument that all of the claims must be construed in light of Figure 13 is misplaced; to do so would essentially rewrite the claim language to correspond to an embodiment not consistent with the scope of the claims as allowed.  *See Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("It is often the case that different claims are directed to and cover different disclosed embodiments. The patentee chooses the language and accordingly the scope of his claims.").

FlatWorld expressly disclaimed removing dragged images from a display after a finger is lifted.  Figure 13 is inconsistent with the claims that remove images "when" a threshold velocity is exceeded.  As such, FlatWorld's proposed construction for "threshold velocity" should be rejected.

### D.  The Term "Representative Thereof" Cannot Be Defined By the Prior Art Subject Matter It Carved Out

FlatWorld's proposed construction for "representative of the removed image" to mean "a depiction of at least a portion of the removed image" cannot stand.  It mischaracterizes the nature of the negative limitation amendments it made to overcome the prior art Henckel reference during prosecution.[21]

FlatWorld distinguished Henckel by amending all of the claims with negative limitations that prohibit the display of a "representative" of a removed image.[22]  As explained by FlatWorld:

> In the telephonic interview, Examiner pointed out that in Henckel, the *image* of the page did in fact disappear, even though *the page remained represented in the display by its edge*.  Applicants have now amended their independent claims to

---

[21] *See* Defendants' Opening Brief at 14-16.
[22] Exhibit D to Claim Construction Chart [C.A. No. 12-804-LPS, D.I. 51-7] ("Defendants' Chart"), Ex. D-2 at 2-4; *see also id.*, Ex. D-7 at 3-5.

make it completely clear that not only the image, but also any representative thereof, disappeared from the display."[23]

The Henckel page "edge" that was overcome by these amendments is labeled 24 or 26 in the below Figure 2:



*Fig. 2*

(Defendants' Chart, Ex. D-6 (Henckel patent) at Fig. 2.)

FlatWorld now argues that the "representative" of the removed image is "a depiction of at least a portion of the removed image" in an attempt to limit the negative limitation to the Henckel vertical line portion of the removed page. But FlatWorld is not entitled to a narrow and special meaning that effectively carves out only the Henckel vertical line and nothing else, thereby unduly broadening the claim. If the "representative" of the removed image was meant to be limited to "a depiction of at least a portion of the removed image" as FlatWorld contends, that is what the claim should have been amended to state. But it was not. Instead, it was amended to state that a "representative" of a removed image must not remain on the display and, to one of ordinary skill in the art, the term "representative" means "a portrayal or symbol of the removed image." Thus, if the term is not considered to be indefinite – and it should be – Defendants'

---

[23] *Id.* at 7 (emphasis added).

alternative proposed meaning should be adopted as the proper construction.[24]

Further, the Examiner rejected each of the statements made during prosecution on which FlatWorld relies to support its construction.  During prosecution, FlatWorld repeatedly tried (in vain) to convince the Examiner that Henckel never removes a page image because it only "changes the form that the image of the page has."[25]  But, the Examiner disagreed time and time again:

- Mar. 12, 2003 Office Action:  Dismissing argument that "the [Henckel] operation does not remove a flipped object from the display" as "not persuasive."[26]

- Aug. 29, 2003 Office Action:  "Henckel discloses that 'This page turning technique is very similar to the turning of a page with an actual book or magazine' which is removal of the image of a displayed book page, and subsequently/automatically replacing with another (next page) image (abstract, Figs. 1-2)."[27]

- Jan. 28, 2004 Office Action:  "Applicant's argument (page 3 lines 1-2) 'it is appears [sic] as shown at 28; after it is turned, its edge appears as a lines 26 [sic].' This argument is not persuasive because the examiner relies the image [sic] of Henckel's page being removed (not its edge of the page) as required by Applicant's claim."[28]

FlatWorld finally relented and, on March 22, 2004, amended the claims to include essentially the same "representative" language that now appears in the asserted '318 patent claims, and waived the same arguments that it now attempts to reassert.[29]

The term "representative of the removed image" cannot be construed to mean "a depiction of at least a portion of the removed image" based on proposed interpretations of Henckel that were rejected during prosecution.  The Examiner did not agree that Henckel always

---

[24] See Defendants' Opening Brief at 16-19.
[25] See FlatWorld's Opening Brief at 21-22.
[26] Handy Decl.in Support of Defendants' Joint Responsive Claim Construction Brief, Ex. A at 8.
[27] Id., Ex. B at 3.
[28] Id., Ex. C at 7.
[29] Defendants' Chart, Ex. D-2 at 2-4.

leaves a "portion of the removed image" on the display, and FlatWorld ultimately conceded. Because the prosecution history makes clear that the removed image and the "representative thereof" are wholly distinct, FlatWorld's "at least a portion" construction should be rejected.

### E.   "Removed/Removing" Is a Separate Limitation From "Without Leaving a Representative of the Removed Image"

By construing "removed/removing" to mean "eliminating the image from the screen without leaving a representative of the removed image on the screen," FlatWorld contends that the "without leaving a representative thereof" negative limitations are only clarifying amendments for what "removing" an image means in the claims.[30]  First, as discussed in the preceding section (and in Defendants' Opening Brief), the addition of the "without leaving a representative thereof" negative limitation was not a clarifying amendment but, quite to the contrary, was essential to overcoming the Examiner's prior art rejection and obtaining allowance of the claims.  Second, even if it were a "clarifying" amendment, courts have made clear that "'clarifying amendments' are narrowing, in that they constitute an admission that the 'claims as originally drafted did not limit' the invention appropriately – otherwise, there would be no need for clarification.'"[31]  FlatWorld conceded that the claim amendments prohibiting a "representative" of a removed image from being displayed were distinct from the removed image

---

[30] *See* FlatWorld's Opening Brief at 19 (characterizing "without leaving any representative" as clarifying what the distinct term "removed/removing" means).

[31] *TM Patents, LLP v. Int'l Bus. Machines Corp.*, 136 F. Supp. 2d 209, 217 (S.D.N.Y. 2001); *see also Pickholtz v. Rainbow Techs., Inc.*, 125 F. Supp. 2d 1156, 1162-63 (N.D. Cal. 2000) (rejecting plaintiff's argument amendment only clarified other terms because "even if plaintiff subjectively believed that the original claim was identical to the amended claim … the clarification was necessary to distinguish the prior art"), *rev'd and remanded on other grounds*, 284 F.3d 1365 (Fed. Cir. 2002).  Defendants also pointed out how FlatWorld's construction reads out the negative "representative" limitation entirely by making it redundant to the term "remove."  (Defendants' Opening Brief at 14 (citing *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting proposed construction that would read other limitations out of the claim).).)

itself.[32]  Accordingly, FlatWorld cannot now argue that the term "removing" subsumes the "without leaving a representative" limitations that were critical to obtaining allowance.

### F.  FlatWorld's Construction of "Image" is Not Reasonably Restricted

FlatWorld's construction of the term "image" to mean <u>any</u> "displayed or drawn representation on the display, capable of being manipulated as a unit" is not reasonably limited. FlatWorld's argument that "the image must be a representation of something that is *displayed on the screen*" makes no sense.[33]  FlatWorld offers no guidance as to what a "representation" might be.  In contrast, the Defendants' construction properly limits the scope of an "image" to an identifiable *object* in the display that is manipulated in response to location inputs.

## III.   CONCLUSION

FlatWorld's proposed constructions essentially ask this Court to rely on a specious dictionary definition and an overblown characterization of source code to broaden the scope of the '318 patent to encompass every variant of removing images from a screen that are dragged quickly.  FlatWorld, however, disclaimed removing dragged images from a screen after a finger is lifted to obtain allowance, and the Figure 13 source code does not even comport with the '318 patent claims that remove images "when" a threshold velocity is exceeded.  Therefore, Defendants respectfully request that their constructions, which adhere to the intrinsic record and only cite extrinsic evidence to corroborate the same, be adopted.

---

[32] *See* Defendants' Opening Brief at 15-16.
[33] *See* FlatWorld's Opening Brief at 7.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Victor H. Polk, Jr.
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
Tel:  (617) 310-6000

Richard A. Edlin
Hyun Chung
Chang Joo Kim
Joshua L. Raskin
Kate Hutchins
John Handy
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200

By:   /s/ David E. Moore
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Hercules Plaza 6th Floor
      1313 N. Market Street
      Wilmington, DE  19899
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

*Attorneys for Defendants Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.
and Samsung Telecommunications America,
LLC*

SHAW KELLER LLP

OF COUNSEL:

Steven Lieberman
Brian A. Tollefson
Joo Mee Kim
ROTHWELL, FIGG, ERNST
  & MANBECK, PC
607 14th Street., N.W., Ste. 800
Washington, D.C.  20005
Tel:  (202) 783-6040

Dated:  October 15, 2013
1126461/39350

By:   /s/ David M. Fry
      John W. Shaw (#3362)
      Karen E. Keller (#4489)
      David M. Fry (#5486)
      300 Delaware Avenue, Suite 1120
      Wilmington, Delaware 19801
      Tel: (302) 298-0700
      jshaw@shawkeller.com
      kkeller@shawkeller.com
      dfry@shawkeller.com

*Attorneys for Defendants LG Electronics,
Inc., LG Electronics U.S.A., Inc. and
LG Electronics Mobilecomm U.S.A., Inc.*