IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FLATWORLD INTERACTIVES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | **Civil Action No. 12-804-LPS**<br><br>**Jury Trial Demanded** |
| FLATWORLD INTERACTIVES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., et al.,<br><br>Defendants. | **Civil action No. 12-964-LPS**<br><br>**Jury Trial Demanded** |

## PLAINTIFF FLATWORLD'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Steve W. Berman (admitted *pro hac vice*)
Mark S. Carlson (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
markc@hbsslaw.com

# TABLE OF CONTENTS

|      |                                                                                                                                                           | Page |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | "REMOVED"/"REMOVING" AND "REPRESENTATIVE THEREOF"                                                                                                         | 1    |
|      | A. "Representation thereof" was Added to the Claims by the *Examiner* to Clarify the Meaning of the Claims                                                | 2    |
|      | B. Inclusion of Clarifying Claim Language in the Form of a Negative Limitation is not Improper and does not Require Positive Recitation in the Specification | 5    |
| II.  | CLAIM TERMS RELATING TO THE CONDITIONAL "WHEN" TERM                                                                                                       | 6    |
|      | A. Defendants' Construction Ignores the Language of the Claims                                                                                            | 7    |
|      | B. Defendants' Constructions Exclude the Preferred Embodiment in the Specification                                                                        | 8    |
|      | C. The Disclaimer Alleged by Defendants is not Clear and Unambiguous                                                                                      | 10   |
| III. | OTHER INDIVIDUAL TERMS                                                                                                                                    | 12   |
|      | A. "the velocity with which the image is being dragged" and similar terms                                                                                 | 12   |
|      | B. "dragged," "continually moved," "continuing touch"                                                                                                     | 12   |
|      | C. "image"                                                                                                                                                | 13   |
|      | D. "image's content"                                                                                                                                      | 13   |
|      | E. "class"                                                                                                                                                | 14   |
|      | F. "ordered set"                                                                                                                                          | 15   |
| IV.  | CONCLUSION                                                                                                                                                | 15   |

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abtox, Inc. v. Exitron Corp.*,
131 F.3d 1009 (Fed. Cir. 1997) .................................................................................................. 8

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
707 F.3d 1318 (Fed. Cir. 2013) .................................................................................................. 9

*Application of Barr*,
58 C.C.P.A. 1388, 1399 (C.C.P.A. 1971) ................................................................................... 6

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ................................................................................................ 11

*Donlen Abrasives, Inc. v. Full Circle Intern., Inc.*,
667 F. Supp. 2d 1046 (D. Minn. 2009) ...................................................................................... 2

*Gentry Gallery, Inc. v. Berkline Corp.*,
134 F.3d 1473 (Fed. Cir. 1998) .................................................................................................. 8

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005) .................................................................................................. 8

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
362 F.3d 1367 (Fed. Cir. 2004) .................................................................................................. 8

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
78 F.3d 1575 (Fed. Cir. 1996) .................................................................................................... 8

*Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.*,
378 F. Supp. 2d 459 (D. Del. 2005) ........................................................................................... 2

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) .................................................................................................. 2

*Merck & Co. v. Teva Pharms. USA, Inc.*,
347 F.3d 1367 (Fed. Cir. 2003) .................................................................................................. 1

*Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*,
75 F.3d 1545 (Fed. Cir. 1996) .................................................................................................... 8

*N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*,
215 F.3d 1281 (Fed. Cir. 2000) .................................................................................................. 8

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
386 F.3d 1133 (Fed. Cir. 2004) .................................................................................................. 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................................. 1

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243, 1250 (Fed. Cir. 1998) ..................................................................... 1, 7

*Rheox, Inc. v. Entact, Inc.*,
    276 F.3d 1319 (Fed. Cir. 2002) .................................................................................. 8

*Santarus, Inc. v. Par Pharm., Inc.*,
    694 F. 3d 1344 (Fed. Cir. 2012) ................................................................................. 6

*Storage Tech. Corp. v. Cisco Sys. Inc.*,
    329 F.3d 823 (Fed. Cir. 2003) .................................................................................... 8

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ................................................................................ 11

*Thorner v. Sony Computer Entm't Am., LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ................................................................................ 11

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 8

Context matters, particularly in patent claim construction. Claims are construed in the context of the specification "of which they are a part"[1] and the prosecution history which is the "complete record of the proceedings before the PTO."[2] Claims should not be construed to do violence to the common and ordinary meaning of the claim language. Claims should not be construed to exclude the preferred embodiment disclosed in the specification. And claims should not be construed on the basis of a tortured and idiosyncratic interpretation of prosecution history.

By stripping claim language from its context in the intrinsic evidence – including the common and ordinary meaning of the terms – Defendants violate nearly every canon of claim construction. In contrast, FlatWorld's constructions "stay[] true to the claim language and most naturally align[] with the patent's description of the invention" and the prosecution history.[3] Thus, FlatWorld's constructions are the correct constructions and should be adopted.

## I. "REMOVED"/"REMOVING" AND "REPRESENTATIVE THEREOF"

"Remove" is neither a technical term, nor does it require an idiosyncratic interpretation. The term does, however, require a construction that shows fidelity to the claim language and the rest of the intrinsic evidence. While to "remove" something is simply to "eliminate or get rid of" it, in the context of the claim language, it is necessary to identify what is being removed, *i.e.* the image, and that the removal is in fact a removal, *i.e.*, there is no longer a "representative" of the image on the screen. Defendants attack FlatWorld for construing the term as "eliminating the image from the screen without leaving a representative of the removed image on the screen" because, they contend, FlatWorld combines two claim limitations into one.

---

[1] *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).
[2] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).
[3] *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

The fundamental failure of Defendants' proposed construction is that it ignores the context of both the claim language from which the terms come and the prosecution history. The claim language and its related prosecution history *unambiguously* demonstrate that FlatWorld's proposed construction *was always* the intended construction for "removed"/"removing" by both FlatWorld and the examiner. The "representation thereof" language *was added to the final allowed form of the claims by the examiner* for the purpose of <u>*clarifying*</u> the meaning of "removed"/"removing," not narrowing the meaning of the claims. FlatWorld's construction is entirely consistent with the plain language meaning of "removed"/"removing," the context of these terms in the claims, and the examiner's clear intent in clarifying the meaning of the claims.

**A.** **"Representation thereof" Was Added to the Claims by the *Examiner* to Clarify the Meaning of the Claims**

Defendants' argument boils down to the assertion that FlatWorld's proposed construction for "removed"/"removing" improperly renders portions of the claim language superfluous[4] and meaningless.[5] This is wrong. Courts have long recognized that there is nothing improper about adding language that clarifies the claim without substantively changing the meaning of the claim terms.[6] The patentee, or in this case the examiner, is free to add clarifying language without substantively changing the meaning of the claim language.

---

[4] D.I. 45 at 14.

[5] *Id.* at 14, n.21

[6] *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1377 (Fed. Cir. 2001) ("we conclude that the addition of the words "transform calculation" was not a narrowing amendment because that addition did nothing more than make express what had been implicit in the claim as originally worded. That interpretations flows from the original claim as a whole and in light of the specification."); *Honeywell Intern., Inc. v. Hamilton Sundstrand Corp.*, 378 F. Supp. 2d 459, 476 (D. Del. 2005) (amendment of claim amounted "to no more than further explanation of the substance that was in the specification from the beginning.") (Sleet, J.); *Donlen Abrasives, Inc. v. Full Circle Intern., Inc.*, 667 F. Supp. 2d 1046, 1058 (D. Minn. 2009) ("the amendment to the 'bases' claim limitation only clarifies the number of bases present as a matter of style, and does not surrender any subject matter regarding the composition or position of the bases.")..

Many of FlatWorld's claims, as originally submitted to the PTO, contained the term "remove."[7] In prosecution, FlatWorld[8] explained that "remove" and variations of the word carried their ordinary meaning, *i.e.*, to "eliminate or get rid of." By definition, "removed" and "removing" mean to "do away with"[9] or "eliminate or get rid of"[10] or "abolish."[11] The fact that a "representation thereof" is not left behind after the image is removed is inherent in the meaning of "remove" and therefore disclosed within FlatWorld's specification. The specification explains that a throw "gets rid of the part being thrown."[12] No person, let alone a person of ordinary skill in the art, would normally assume that "remove" could mean to leave behind "a depiction of at least a portion of the removed image."[13]

It was only when the examiner rejected claims having the "remove" limitation that any need for clarification was introduced. Specifically, the examiner stated that Henckel teaches a system that simulates a book "characterized in that *removal* of an image 28 from the display is done in response to location inputs that drag 'swipe' the image."[14] FlatWorld responded that Henckel does not disclose the "remove" limitation:

---

[7] 2 Meyer Decl., Ex. 1 at FW00010569-70.

[8] At the time that the original patent prosecution occurred, the patent was still owned by its inventor, Dr. Slavoljub Milekic. It was subsequently assigned to FlatWorld. For the sake of simplicity, throughout this brief the patentee shall be referred to as "FlatWorld."

[9] 2 Meyer Decl., Ex. 2.

[10] *Id.*, Exs. 3, 4.

[11] *Id.*, Ex. 5.

[12] 'D.I. 51-1 at 12:24. *See also* 14:41-42 (a throw works by "moving the object at a speed faster than a threshold velocity to get rid of it.").

[13] Defendants quote the inventor, Dr. Milekic, in an attempt to show that "representative thereof" is not supported by the specification, but the quoted text demonstrates is that "remove" was always meant to exclude leaving representations of the removed image behind on the screen. D.I. 45 at 17-18. For example, defendants' counsel asked if, in the context of his research, Dr. Milekic had ever considered leaving a representative of a thrown image on the screen, and Dr. Milekic responded that it was never part of his research (*id.*) – *i.e.*, leaving a representation of an image behind was never part of Dr. Milekic's concept of "removing" a thrown image.

[14] 2 Meyer Decl., Ex. 1 at FW00010728-29 (emphasis supplied). *See* D.I. 41-7, Ex. D-6 to view the disclosure of the Henckel patent.

> However, Henckel additionally fails to disclose the limitation that what is done "in response to location inputs that drag the image at a velocity which is above a threshold velocity" is "removal of an image from the display." As one would expect from the fact that the behavior of Henckel's display is analogous to that of a book, when the user moves his finger from right to left across the displayed page in Henckel's display, "a graphical depiction of a page turning is shown" (col. 2, line 63). ***When a page is turned in a book, the page is not removed from the book. Similarly, when the page is turned in Henckel's display, it is not removed from the display, but is instead indicated in the display by its edge.***[15]

In other words, FlatWorld's counsel clarified that he was using "remove" with its plain meaning rather than the non-literal sense in which the examiner was using it with regard to the electronic book of Henckel. Removal means to "eliminate or get rid of" the image, not simply to flip the page and leave some representation of the flipped page on the screen.

Over the course of several office actions and responses, FlatWorld's counsel and the examiner continued to hash out whether Henckel in fact disclosed a "removed" image until FlatWorld appealed the examiner's rejection to the Board of Patent Appeals and Interferences. In the appeal brief, FlatWorld again stated the common and ordinary meaning of "remove":

> Beginning with the limitation that the image is "removed from the set", it should be remembered that what Henckel discloses is "a display similar to a printed book or magazine." (Henckel, *Abstract*). When one turns a page in a printed book or magazine, the page does not simply vanish from the book or magazine; as would be expected from a display that emulates the behavior of a printed book or magazine, a turned page also does not vanish from Henckel's display. Instead, a given page is always present in Henckel's display, just as a given page is always present in a printed book or magazine…***Since a given page in Henckel's display is always represented in Henckel's display by either a displayed page 20, a turning page 28, or a line 24 or 26, Henckel does not disclose the limitation of Applicant's independent claims that Applicant's thrown image is "removed from the set".***[16]

As a result, the patent examiner recognized the distinction between FlatWorld's claimed invention and the invention of Henckel and made an *examiner's amendment* on the record to:

---

[15] 2 Meyer Decl., Ex. 1 at FW00010737 (emphasis added).

[16] *Id.*, at FW00010818-19 (emphasis added).

> bring out in the independent claims that <u>when the system detects that the velocity with which the image is being dragged exceeds a threshold velocity, the system responds by removing the image from the display without leaving any representative thereof in the display</u>. This not only overcomes any concerns with the Henckel et al reference, but also overcomes any interpretation of the claims of the image being dragged off the display in order to remove them – the present invention clearly distinguishes beyond that.[17]

Based on the words of the examiner, it is clear that the reason that the examiner added this language was to clarify "remove." *That is why the examiner used the phrase "bring out"* – the additional language was implicit in the meaning of the term "remove," and the additional language merely emphasizes – *bring out* – that no part of the image remains on the screen.

Indeed, defendants' argument that "representative thereof" must be defined separately from the "removed" term and is indefinite for lack of written description is further weakened because the examiner himself had no such concerns when he added this language to the claims. FlatWorld's proposed construction for "representative thereof" ("a depiction of at least a portion of the removed image"), on the other hand, is fully consistent with the examiner's intent to make clear that "a displayed page," "a turning page," "or a "line" showing the edge of a page (representatives) are not left behind when an image is "removed."

**B.   Inclusion of Clarifying Claim Language in the Form of a Negative Limitation Is Not Improper and Does Not Require Positive Recitation in the Specification**

Defendants reference a motion Samsung seeks, but has not been given permission, to file for Summary Judgment of Invalidity to support their claim construction.[18] Notwithstanding the that Samsung has not been granted leave to file its premature motion, and further that its written description argument presents issues of fact and claim construction, Courts have long held that negative claim limitations are not improper. As stated by the Federal Circuit's predecessor,

---

[17] *Id.* at FW00010833 (underlining in original).

[18] D.I. 37-2. FlatWorld has opposed defendants' motion for leave to file a motion for summary judgment prematurely and has further filed a response to defendants' notice of subsequent authority.

"[t]he real issue in any such case is not whether the recital is 'functional' or 'negative,' but whether the recital sets definite boundaries on the patent protection sought – that is, whether those skilled in the relevant art can determine what the claim does or does not read on."[19]

Moreover, the case law Samsung cites is inapposite. In Samsung's primary case, *Santarus, Inc. v. Par Pharm., Inc.*,[20] the Federal Circuit *reversed* the district court's invalidation of a claim for alleged lack of written description because the claims were, in fact, fully supported by the specification. In *Santarus*, the claims contained an actual negative limitation as opposed to the present case where the language the defendants cite as a negative limitation is simply clarifying language. Here, as in *Santarus*, the claims are fully supported by the specification because it recites that an image is "removed" and gotten "rid of," there is no indication that a common sense-defying definition in which "removed" might mean something less than to "eliminate or get rid of" was intended, and the "representation thereof" language was added *by the examiner* solely to clarify the meaning of "removed"/"removing."

## II. CLAIM TERMS RELATING TO THE CONDITIONAL "WHEN" TERM

Defendants group together a series of terms under the umbrella of phrases that "are all directed to the key issue of when the image is thrown" and insist that they should be construed temporally so that exceeding threshold velocity and removal must be simultaneous.[21] However, defendants' constructions are improper because (A) they ignore the claim language that conflicts with their argument, (B) their construction would exclude the preferred embodiment in the specification and it is axiomatic that such a construction is "rarely, if ever, correct", and (C) there has been no disclaimer of claim scope much less the required clear and unambiguous disclaimer.

---

[19] *Application of Barr*, 58 C.C.P.A. 1388, 1399 (C.C.P.A. 1971) (reversing examiner's rejection of claim containing negative limitation).

[20] 694 F. 3d 1344 (Fed. Cir. 2012).

[21] D.I. 45 at 3.

## A. Defendants' Construction Ignores the Language of the Claims

One of the common and ordinary meanings of the word "when" is as a conditional term synonymous with "if,"[22] "in the event that,"[23] or "in view of the fact that; considering that."[24] This is particularly so when an event (removal) is conditioned on more than one other event. The Federal Circuit has recognized that "when" may be construed as a conditional term.[25] And, the specification of the '318 patent explicitly and directly establishes that "when" is meant to be understood as a conditional term.[26] Most importantly, the claims themselves require it.

The claims require not one, but two conditions to be met before an image is removed from the screen. First, the image must be dragged, and *second* the system must detect that the velocity exceeds a threshold, without specifying the temporal relationship between them:

> *when* **[1]** the image is being dragged in response to the location inputs *and* **[2]** the system detects that the velocity with which the image is being dragged exceeds a threshold velocity, *the system responds* by removing the image from the display without leaving any representative thereof in the display.[27]

In this context, where *two conditions* must be met as the claim plainly requires, "when" means only that both events must occur, but it *does not* mean that both conditions must occur *simultaneously* before an image is removed. This construction is underscored by the contextual "system responds" language, which specifies that the removal may be *in response to, i.e., follow,* the recited conditions. The preferred embodiment unambiguously underscores this fact. In the preferred embodiment, the system processes a dragging operation, *then after the touch ends*, it

---

[22] D.I. 48-3, 48-4.

[23] D.I. 48-3.

[24] D.I. 48-2.

[25] *Renishaw PLC*, 158 F.3d at 1243, 1251 (construing "when" such that "contact and deflection are a *condition precedent* to signaling.") (emphasis added).

[26] D.I. 51-1 at 12:9-34; *see also* D.I. 57 at 15-16.

[27] *Id.* at 15:8-13 (emphasis and numbering supplied).

runs algorithms to determine whether a throw has occurred and the direction of the throw.[28]

## B. Defendants' Constructions Exclude the Preferred Embodiment in the Specification

It is a well-settled canon of claim construction that a construction that excludes a preferred embodiment "is rarely, if ever, correct."[29] The Federal Circuit has consistently confirmed that constructions that exclude the preferred embodiment are improper.[30] The only circumstance in which the Federal Circuit upholds a claim construction that excludes a preferred embodiment is when the patentee amends claims to specifically exclude it.[31] But disavowal of claim scope must be *clear, deliberate, and unambiguous*.[32] Accordingly, unless a preferred embodiment has been clearly, deliberately, and unambiguously disclaimed, it is error to construe a claim to exclude a preferred embodiment.

In *Accent Packaging, Inc. v. Leggett & Platt, Inc.*,[33] the infringer proposed a construction that would exclude a preferred embodiment. In *Accent*, claims required "operator bodies being

---

[28] *See also* D.I. 47 at 10-11 explaining, that, because the claims use "comprising" as a transition, each claim is presumptively open-ended and could contain additional features beyond those recited in the claim. *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-72 (Fed. Cir. 2005) ("The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended."). For example, an embodiment of the invention must contain at least the recited conditions (being dragged and detection of meeting a threshold velocity), but the embodiment could also contain other conditions. Defendants' arguments that the claims contain one and only one condition are not only contrary to the literal wording of the claims, they also conflict with long-established, binding case law regarding open-ended claims.

[29] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (construing term so that preferred embodiment fell within the scope of the claim).

[30] *See, e.g., On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (rejecting construction that excluded preferred embodiment); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (same); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1477 (Fed. Cir. 1998) (same); *Abtox, Inc. v. Exitron Corp.*, 131 F.3d 1009, 1010 (Fed. Cir. 1997) (same); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550 (Fed. Cir. 1996) (same); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) (same).

[31] *See Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319 (Fed. Cir. 2002).

[32] *Storage Tech. Corp. v. Cisco Sys. Inc.*, 329 F.3d 823, 833 (Fed. Cir. 2003) ("We therefore do not consider the applicant's statement to be a clear and unambiguous disavowal of claim scope as require to depart from the meaning of the term provided by the written description."); *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1294-95 (Fed. Cir. 2000) (declining to hold that claim scope had been disavowed because the infringer had not shown "that the patentees – with reasonable clarity and deliberateness – defined 'plasma etching' as excluding ion bombardment") (internal citations omitted).

[33] 707 F.3d 1318 (Fed. Cir. 2013).

operably coupled with a respective one of said gripper, knotter, cutting element, and cover."[34] The infringer proposed a construction requiring *four* operator bodies – "each operably coupled to one and only one of said gripper, knotter, cutting element, or cover."[35] Accent argued that the claims were not limited to a specific number of operator bodies because a single operator body could perform multiple functions.[36] But the district court accepted the infringer's construction, and the accused device, which had only two operator bodies, was therefore held not to infringe.[37]

On appeal, the Federal Circuit reversed. It noted that in the preferred embodiment, there was no one-to-one relationship between the operator bodies and the respective gripper, knotter, cutter, and cover, as required by the district court's construction.[38] Rather, it emphasized that in the preferred embodiment, two operator bodies were coupled to both the knotter and cover, a configuration excluded by the district court's construction. Accordingly, the Court found error.[39] This rule applies even if language in a claim might otherwise imply such a limitation. It ruled that though the term "respective one" might otherwise be limiting, *the preferred embodiments made clear that the patentee never intended a one-to-one limitation.*[40]

The VeggyFace preferred embodiment, the source code of which is disclosed at Figure 13 of the patent,[41] specifically shows that the claimed throw gesture is based on more conditions than simply exceeding a threshold velocity. The image must be dragged, the finger (mouse) must be up (the gesture ends), *and the system must detect that the throw exceeds a threshold*

---

[34] *Id.* at 1323-24.
[35] *Id.* at 1324.
[36] *Id.*
[37] *Id.* at 1325.
[38] *Id.* at 1326.
[39] *Id.*
[40] *Id.*
[41] D.I. 51-1.

*velocity*.[42] The source code of the preferred embodiment that initiates the claimed feature states:

```
repeat forever
put mouseLoc() into OldPosition
set the loc of the target to MouseLoc()
wait 2 ticks
put mouseLoc() into CurrPosition
if the mouse is up then exit repeat
end repeat
put the ticks into StartTime     -- reset timer
if (item 1 of OldPosition – item 1 of CurrPosition) > 2 then
throwLeft…..[43]
```

The first seven lines represent the drag function, which repeats forever, regardless of speed, until "the mouse is up," *i.e.*, the finger is lifted from the touch screen. Significantly, while the drag is occurring, *i.e.*, before "the mouse is up," the system has not "detected" (1) *what the threshold velocity is* or (2) *whether the threshold velocity has been met*. This is because the system does not process the line of code that determines whether the threshold velocity has been met ("if (item 1 of OldPosition – item 1 of CurrPosition) > 2") until after "the mouse is up." Accordingly, the defendants' proposed constructions that require "when" to be interpreted to require that *both conditions* occur simultaneously <u>before "the mouse is up,"</u> exclude the explicitly-disclosed preferred embodiment in the specification.

C.   **The Disclaimer Alleged by Defendants Is Not Clear and Unambiguous**

Defendants argue that during prosecution, FlatWorld disclaimed the full scope of its claims and in particular the preferred embodiment of the invention, by distinguishing its invention over Henckel, but defendants' argument is not supported by the prosecution history. The Federal Circuit has stated that there is a "stringent standard for narrowing a claim term

---

[42] D.I. 57 at 11-14.
[43] D.I. 51-1 at Fig. 13.

- 10 -

beyond its plain and ordinary meaning."[44] Such narrowing requires the intrinsic record to contain "words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."[45] "To constitute disclaimer, there must be a clear and unmistakable disclaimer."[46] Defendants argue that "the applicant unequivocally disavowed throwing images after the finger is lifted."[47] However, defendants' only evidence for this alleged disclaimer is a selective excerpt of the file history, which is taken out of context.

The snippet of file history quoted by defendants for the proposition that "the applicant unequivocally disavowed throwing images after the finger is lifted"[48] simply does not support that alleged disclaimer. In the file history, FlatWorld distinguished the Henckel reference on two grounds: (1) it does not disclose a threshold velocity, and (2) the pages shown in the Henckel system are not removed. In the passage defendants cite, FlatWorld is discussing the fact that Henckel does not have a threshold velocity – FlatWorld was not distinguishing the reference based on some temporal distinction of when the removal occurs in relation to lifting the finger.

In Henckel, the pages turn without any regard to a threshold velocity, and faster or slower swipes only affect how quickly a page is turned, not whether a page is turned at all – whether the swipe is fast or slow in Henckel (in contrast to FlatWorld's invention) does not affect whether the image is "removed." This is clearly shown by the parts of the passage that the defendants have not italicized (*e.g.*, "Instead, as is clear from the description at col. 3, lines 5-19 [of the Henckel patent], the swipe operation done at any speed works [in Henckel] as follows…";

---

[44] *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) (concluding that patentee did not narrow claim scope).

[45] *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (concluding no disclaimer had occurred).

[46] *Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) (holding that district court improperly limited claim term).

[47] D.I. 45 at 5.

[48] *Id.*

"Making fast, short swipes does not, however, change the page turning operation; it merely speeds it up."). Because the point of distinction was whether Henckel disclosed a threshold velocity at all, *not* whether images can be thrown before or after the touch is lifted, there can be no disclaimer of an image thrown after the touch ends. Accordingly, there has been no disclaimer of the preferred embodiment, much less a disclaimer that is clear and unmistakable.

### III.  OTHER INDIVIDUAL TERMS

#### A.  "the velocity with which the image is being dragged" and similar terms

Defendants propose that "velocity" should be defined as "the speed of the image as it is being moved across the screen." However, this definition ignores the fact that there is a fundamental difference between "speed" and "velocity." "Velocity" is a vector, meaning that it contains a directional component in addition to its speed component.[49] Nothing in the specification, claims, or file history indicates that FlatWorld intended "velocity" to mean something less than its common and ordinary meaning. Accordingly, FlatWorld has stated that "velocity" means "the speed of motion *in a given direction*," and the Court should adopt that construction because it corresponds to the common and ordinary meaning of "velocity."

#### B.  "dragged," "continually moved," "continuing touch"

For the term "dragged," FlatWorld's construction is the plain and ordinary meaning and is consistent with dictionaries that define "dragged" in the context of computing.[50] Therefore, the Court should adopt FlatWorld's proposed construction so that this term is clearly defined.

The terms "continually moved" and "continuing touch" must be construed as FlatWorld has proposed because the specification makes clear that, the drag begins with location inputs, such as from a touch on a touchscreen, but the movement of the image can continue even after

---

[49] 2 Meyer Decl., Exs. 2-5.
[50] 2 Meyer Decl., Exs. 6, 7.

the touch ends if the system detects that the threshold velocity has been exceeded. Figure 16 of the specification establishes that in a preferred embodiment, the throw is not initiated until after "the mouse is up" (*i.e.*, the touch has ended).[51] Further, a person of ordinary skill in the art would recognize that dragging can occur with interruptions, such as starting and stopping mid-drag, as long as the mouse button or touch is not released, which conflicts with the defendants' proposed constructions. Therefore, the Court should adopt FlatWorld's proposed construction to avoid excluding the preferred embodiment.

**C. "image"**

Defendants have created a straw man of FlatWorld's claim construction position by stating that FlatWorld's claim construction "is a litigation-inspired attempt to rewrite the claims so that any arbitrary collection of pixels comprises an 'image.'"[52] FlatWorld's claim construction is nothing of the sort. Rather, it is based on the specification of the patent. Figures 13 and 15 both demonstrate that image is treated as a unit by referring to it as a "target" (*e.g.*, "set the loc of the *target* to MousLoc()," "move the *target* to -100, ypos") which would include the invisible regions of an image that are still touchable.[53] For example, if the user wants to drag an image, the user may be able to drag from the image itself or whatever draggable periphery around the image is provided by the system, as the preferred embodiment "VeggyFace" allows.

**D. "image's content"**

Defendants would have the Court rule that a person of ordinary skill in the art would be at a complete loss to understand the meaning of "image's content," despite the fact that the meaning of "content" is discussed in the specification, examples are given in the specification, and "content" is a common word in the English language. Explaining how to make a system for

---

[51] D.I. 51-1.
[52] D.I. 45 at 20.
[53] D.I. 51-1 at Figs. 13 and 15.

manipulating images more intuitive, the specification states that one must focus on "a) making the information (content) manipulable, and b) making the content structure compatible with the child's social environment."[54] It later describes the type of "information (content)" that a particular type of image might have: "[w]ithin the class, the part has an ID number, and if it is a part that comes in pairs, it has an indication whether it is the left or right member of the pair. In the preferred embodiment, this information about the part is encoded in the part's name."[55] A person of ordinary skill in the art would know that, though the exact kind of content in any given system might vary based on context, the term "image's content" is readily understood.

E.    "class"

FlatWorld proposes that class means "a category of images sharing common attributes," a commonly-understood meaning of that term. But again, defendants would have the Court rule that the common English word "class" is indissolubly ambiguous to a person of ordinary skill in the art and therefore indefinite. However, "class" is easily understood by anyone who did not already understand it, by either reading the specification or referring to a dictionary. That the meaning of "class" would be known to a person of ordinary skill in the art is confirmed by the *examiner's* statement that "it was known in the art that manipulating graphical images in GUI is associated with various 'classes of images' such as *type, property, shape, size, and position*."[56]

The *American Heritage Dictionary* and others define "class" as "a set, collection, group, or configuration containing members regarded as having certain attributes or traits in common; a kind of category."[57] And, as defendants concede, the specification provides examples of classes

---

[54] *Id.* at 4:25-27.
[55] *Id.* at 12:47-50.
[56] 2 Meyer Decl., Ex. 1 at FW00010789 (emphasis added).
[57] *Id.*, Ex. 2. *See also* Exs. 4, 5.

and images in a class.[58] However, defendants then conclude that because some images can belong to more than one class ("For example, a 'deer' may be a member of a class of living things, warm blooded living things, animals, animals which walk on four legs, animals in Bambi, etc."), the word "class" is indefinite. No doubt, different designers and different users may organize content in their own way. But what is important is that the designer of the system can make a choice of classification and then have the system operate from that model.

The defendants' contention that there are a "virtually boundless number" of classes is irrelevant to the construction of the term. A person of ordinary skill in the art would know that construction does not depend on what is "permissible" as a class because they would understand that the classification scheme is up to the designer to determine. A person of ordinary skill in the art would also know that the classification scheme for any given group of images as compared with any other group of images does not need to be known ahead of time.

### F. "ordered set"

Defendants' proposed construction is incorrect, because it could exclude ordered sets that can be arranged randomly.[59] The specification makes clear that the order of a set of images may be predetermined, but the order can also be determined randomly at the time that the next image to be displayed is selected by the system.[60] Based on the explicit disclosure of the specification, this Court should adopt FlatWorld's proposed construction.

### IV. CONCLUSION

For at least these reasons, and those stated in its opening brief, FlatWorld respectfully requests that the Court adopt FlatWorld's proposed claim construction.

---

[58] D.I. 45 at 22-23.
[59] D.I. 45 at 25.
[60] D.I. 51-1 at 9:10-13.

Dated: October 15, 2013						Respectfully submitted,

							FARNAN LLP

							*/s/ Brian E. Farnan*
							Brian E. Farnan (#4089)
							Michael J. Farnan (#5165)
							919 N. Market St., 12th Floor
							Wilmington, DE 19801
							(302) 777-0300
							bfarnan@farnanlaw.com
							mfarnan@farnanlaw.com

							Steve W. Berman (admitted *pro hac vice*)
							Mark S. Carlson (admitted *pro hac vice*)
							HAGENS BERMAN SOBOL SHAPIRO LLP
							1918 Eighth Avenue, Suite 3300
							Seattle, WA 98101
							Telephone: (206) 623-7292
							Facsimile: (206) 623-0594
							steve@hbsslaw.com
							markc@hbsslaw.com

							*Attorneys for Plaintiff*
							*FlatWorld Interactives LLC*